O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAMON DEL FIERRO, | ) | Case No. CV 19-07091DDP (JCx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S MOTION** |
| v. | ) | **FOR JUDGMENT ON THE PLEADINGS** |
| | ) | |
| DYNCORP INTERNATIONAL LLC, | ) | |
| | ) | [Dkt. 47] |
| Defendants. | ) | |

Presently before the court is Defendant Dyncorp International LLC ("Dyncorp")'s Motion for Judgement on the Pleadings. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

**I. Legal Standard**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed [] but early enough as not to delay the trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper when the moving party clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990); Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984). The

standard applied on a Rule 12(c) motion is essentially the same as that applied on a Rule 12(b)(6) motion to dismiss for failure to state a claim, with the court accepting all of the non-moving party's allegations as true. <u>Lyon v. Chase Bank USA, N.A.</u>, 656 F.3d 877, 883 (9th Cir. 2011).

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>,556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id</u>. at 678 (citations and internal quotation marks omitted).

**II. Discussion**

Plaintiff worked for Dyncorp at the Point Mugu Naval Air Station ("Point Mugu") from December 2016 to July 2019. (Complaint ¶ 8.) Plaintiff alleges, on behalf of a putative class, that Dyncorp violated California Labor Code § 226 by failing to provide

2

wage statements that accurately identified the applicable rate of pay and hours worked for certain "shift premiums."[1] (Compl. ¶ 30.) Dyncorp now seeks judgment on the pleadings, arguing that, by operation of the "federal enclave doctrine," the state labor code claim Plaintiff advances is inapplicable at Point Mugu.[2]

The Constitution confers upon Congress exclusive jurisdiction over all areas purchased from state governments "for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. "Generally, when an area in a State becomes a federal enclave, 'only the state law in effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." Parker Drilling Mgmt. Servs., Ltd. v. Newton, 139 S. Ct. 1881, 1890 (2019) (quoting James Stewart & Co. v. Sadrakula, 309 U. S. 94, 100 (1940) (internal alteration omitted)); see also Paul v. United States, 371 U.S. 245, 268 (1963) ("[O]nly state law existing at the time of the acquisition remains enforceable, not subsequent laws."). "Existing state law typically does not continue in force, however, to the extent it conflicts with federal policy." Parker, 139 S.Ct. at 1890; see also Paul, 371 U.S. at 369 ("[S]ince there is no conflicting federal policy . . .,

---

[1] More specifically, Section 226(a)(9) requires that wage statements accurately itemize "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." Cal. Lab. Code § 226(a)(9).

[2] It is not clear to the court why Dyncorp waited until the pleadings were closed to assert this defense, which is apparent on the face of Plaintiff's Complaint. Nevertheless, because the defense raises jurisdictional questions as to Plaintiff's standing, the court must address Dyncorp's motion on the merits. See, e.g., City of Los Angeles v. Cty. of Kern, 581 F.3d 841, 845 (9th Cir. 2009).

3

1 we conclude that the current price controls over milk are
2 applicable . . . .").
3      Here, there is no dispute that Point Mugu is a federal
4 enclave, or that it was established as such in 1954.  See Jimenez
5 v. Haxton Masonry, Inc., No. 18-CV-07109-SVK, 2020 WL 3035797, at
6 *4 (N.D. Cal. June 5, 2020).  The parties disagree, however, as to
7 whether, or the extent to which, the law governing Plaintiff's
8 claim existed prior to 1954.  Dyncorp asserts, and Plaintiff does
9 not dispute, that Section 226 did not exist in its current form in
10 1954.  Indeed, the requirement that pay stubs indicate all
11 applicable hourly rates was not implemented until much later.  See
12 Cal.Stats.2000, c. 876, § 6, pp. 6508-09.  Thus, Dyncorp argues,
13 any claim under Section 226 must be limited to the terms of the
14 original statute, which, when enacted in 1943, required only that
15 employers provide a wage statement "showing all deductions made
16 from such wages . . . ." Ward v. United Airlines, Inc., 9 Cal. 5th
17 732, 745 n.3 (2020); Cal.Stats.1943, c. 1027, p. 2965, § 1.[3]
18 Plaintiff responds, in opposition, that because Section 226 was
19 enacted prior to the establishment of Point Mugu as a federal
20 enclave, Section 226 is applicable in its entirety, regardless
21 whether its various constituent parts existed prior to 1954.[4]

---

[3] Section 226's original requirement remains in effect, and now resides at Section 226(a)(4).

[4] As Plaintiff points out, parties and courts in other cases appear to have assumed that Section 226 is applicable either in its entirety or not at all.  See, e.g., Jimenez v. Haxton Masonry, Inc., No. 18-CV-07109-SVK, 2020 WL 3035797, at *5 (N.D. Cal. June 5, 2020); Perez v. DNC Parks & Resorts at Asilomar, Inc., No. 119CV00484DADSAB, 2019 WL 5618169, at *5 (E.D. Cal. Oct. 31, 2019). Absent any discussion of the issue raised here, or any indication that any party raised the issue, those decisions are of limited
(continued...)

4

   The court finds neither argument persuasive.  To the extent Plaintiff argues that the only relevant question is whether a particular statute existed, in any form, at the time a federal enclave came to be, that argument has no merit.  By Plaintiff's logic, a state could impose an entirely novel legal regime upon a federal enclave simply by amending a pre-existing statute to include new, completely unrelated, provisions.  Dyncorp's approach to the federal enclave doctrine, however, is unduly restrictive.  As Dyncorp acknowledges, "[t]he Supreme Court has recognized at least three exceptions to the rule that only state law in effect at the time of cession applies within the federal enclave . . . ."  Allison v. Boeing Laser Tech. Servs., 689 F.3d 1234, 1237 (10th Cir. 2012); see also Albers v. Yarbrough World Sols., LLC, No. 5:19-CV-05896-EJD, 2020 WL 2218964, at *7 (N.D. Cal. May 7, 2020) (citing United States v. Sharpnack, 355 U.S. 286, 294-95 (1958)).  One such exception applies "where minor regulatory changes modify laws existing at the time of cession."  Allison, 689 F.3d at 1237 (citing Paul, 371 U.S. at 269).

   The Supreme Court applied this "minor change" exception in Paul.  There, the federal government sought to shield certain on-base milk sales from California's then-current price control laws.  Paul, 371 U.S. at 268.  Although the federal government conceded that California's price control regime existed prior to the transfer of enclave lands to federal control, the government contended that under the federal enclave doctrine, California could only enforce the price floors in effect at the time of the

---

[4](...continued)
utility.

5

handover, and not later-enacted price regulations. Id. The Court disagreed. As the Court explained, "if there were price control of milk at the time of the acquisition and the same basic scheme has been in effect since that time, we fail to see why the current one, albeit in the form of different regulations, would not reach [] purchases and sales of milk on the federal enclave . . . ." Paul, 371 U.S. at 269.

Dyncorp contends that the circumstances here are similar to those in Allison. There, a plaintiff sought to extend employment-related common law causes of action onto a federal enclave, even though the common law causes of action were not recognized under state law until after the establishment of the enclave. Allison, 689 F.3d at 1236 (10th Cir. 2012). The plaintiff attempted to avoid the federal enclave doctrine by arguing that the doctrine applies only to statutory causes of action, and not common law. Id. at 1240. The Allison court rejected this assertion, as well as the plaintiff's attempt to shoehorn his claims into the Paul "minor change" exception. Id. at 1241-43. As the court explained, the plaintiff's claims were not "incremental changes to an existing regulatory scheme," but rather "substantial new incursions into a field that was previously unregulated, or, if at all, regulated very lightly," and would represent "a new body of substantive state employment and tort law where none previously existed." Id. at 1243.

Notwithstanding Dyncorp's characterization, the circumstances here are far closer to those in Paul than to those in Allison. Dyncorp does not dispute that Section 226 has regulated the form and substance of wage statements since 1943, prior to the

6

establishment of the Point Mugu federal enclave.  Thus, while the employer in Allison might have been blindsided by the potential application of a theretofore inapplicable body of law, Dyncorp does not and cannot make any similar claim here.  For as long as Point Mugu has existed as a federal enclave, on-base employers have had to comply with California law regulating wage statements.  Although the requirement under Section 226(a)(9) that wage statements include all applicable hourly rates paid is undoubtedly a post-handover change, the mandated addition of a single line item is no more than an incremental change to an existing regulatory regime, akin to the price floor increase in Paul.  This relatively minor additional requirement hardly constitutes a new body of substantive law or an "incursion into a field that was previously unregulated."[5]  The federal enclave doctrine does not, therefore, bar Plaintiff's sole claim under California Labor Code Section 226.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings is DENIED.

---

[5] This Court's conclusion is not affected by the court's decision in Jackson v. Mission Essential Pers., LLC, No. CV 11-1444-R, 2012 WL 13015000, at *3 (C.D. Cal. Apr. 13, 2012). There, although the court discussed an enclave that was established "no later than 1944," the court's discussion suggests that the enclave may have been established in 1940, or indeed as early as 1897.  Moreover, the court stated, apparently inaccurately, that Section 226 was not enacted until "after 1944."  Furthermore, in any event, the Jackson court did not mention or discuss the Paul exception, concluding only that Congress had not expressly adopted various California Labor Code protections.  Similarly, in finding that the federal enclave doctrine precluded certain claims under California wage orders, the court in George v. UXB Int'l, Inc., No. C-95-20048-JW, 1996 WL 241624, at *3 (N.D. Cal. May 3, 1996) engaged in only a limited, and not entirely accurate, discussion of Paul, without recognizing that the Paul court did find California's milk price controls applicable to certain on-base sales, and without any discussion of the "minor change" exception.

7

IT IS SO ORDERED.

Dated: January 27, 2021

                                          DEAN D. PREGERSON
                                          United States District Judge

8