O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAMON DEL FIERRO,

        Plaintiff,

   v.

DYNCORP INTERNATIONAL LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)

Case No. CV 19-07091DDP (JCx)

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Dkt. 78]

Presently before the court is Defendant Dyncorp International LLC ("Dyncorp")'s Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

**I.   Background**

Plaintiff worked for Defendant Dyncorp International LLC ("Dyncorp) at the Point Mugu Naval Air Station ("Point Mugu") from December 2016 to July 2019. (Complaint ¶ 8.) Plaintiff alleges that Dyncorp violated California Labor Code § 226 by failing to provide wage statements that accurately identified the applicable rate of pay and hours worked for certain "shift premiums." (Compl. ¶ 30.)

1     Labor Code Section 226(a)(9) requires that wage statements

2  accurately itemize "all applicable hourly rates in effect during

3  the pay period and the corresponding number of hours worked at each

4  hourly rate by the employee . . . ."  Cal. Lab. Code § 226(a)(9).

5  There is no dispute as to the contents of Plaintiff's pay stubs.

6  Generally, an "Hours and Earnings" section of Plaintiff's wage

7  statement listed a description of several different types of pay,

8  including categories such as "RegularPay," "Holiday," "Vacation P,"

9  paid personal leave (PPL 100%), and "Shft $2.05," as depicted in

10  the July 16, 2019 example below.

**HOURS AND EARNINGS**

| Description | Pay Period Begin Date | End Date | Rate | Current Hours | Earnings | YTD Hours | Earnings | D |
|---|---|---|---|---|---|---|---|---|
| PPL 100% | 07/16/2019 | 07/16/2019 | | 17.70 | 628.53 | 63.70 | 2,261.99 | F |
| PPL 100% | 07/16/2019 | 07/16/2019 | | 8.00 | 284.08 | | 0.00 | F |
| RegularPay | 07/16/2019 | 07/16/2019 | | 52.00 | 1,846.52 | 1,102.00 | 39,132.02 | F |
| Shft $2.05 | 07/16/2019 | 07/16/2019 | | | 226.32 | | 2,678.12 | C |
| Vacation P | 07/16/2019 | 07/16/2019 | | 32.70 | 1,161.18 | 32.70 | 1,161.18 | C |
| Holiday - | | | | | 0.00 | 56.00 | 1,988.56 | |
| Medical Be | | | | | 0.00 | | 1,500.00 | |
| Vacation - | | | | | 0.00 | 52.00 | 1,846.52 | |
| **TOTAL:** | | | | **110.40** | **4,146.63** | **1,306.40** | **50,568.39** | **T** |

20  (Declaration of Jill Sterner, Ex. 24 at 128).  Wage statements such

21  as this one, however, did not include applicable rates of pay or,

22  with respect to the "Shft $2.05" category, the number of hours

23  worked.  Other wage statements, such as the June 13, 2019 statement

24  depicted below, do list some applicable rates of pay, but continue

25  to omit hours worked data with respect to the "Shft $2.05"

26  category.

| | Pay Period | | | Current | | YTD | |
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings |
|---|---|---|---|---|---|---|---|
| RegularPay | 05/31/2019 | 06/06/2019 | 35.51 | 40.00 | 1,420.40 | 906.00 | 32,172.06 |
| Shft $2.05 | 05/31/2019 | 06/06/2019 | 2.05 | | 82.00 | | 2,123.80 |
| Med Credit | 05/31/2019 | 06/13/2019 | | | 100.00 | | 1,300.00 |
| PPL 100% | 06/07/2019 | 06/13/2019 | 35.51 | 16.00 | 568.16 | 38.00 | 1,349.38 |
| RegularPay | 06/07/2019 | 06/13/2019 | 35.51 | 8.00 | 284.08 | | 0.00 |
| Shft $2.05 | 06/07/2019 | 06/13/2019 | 2.05 | | 82.00 | | 0.00 |
| Vacation | 06/07/2019 | 06/13/2019 | 35.51 | 16.00 | 568.16 | 44.00 | 1,562.44 |
| Holiday - | | | | | 0.00 | 48.00 | 1,704.48 |
| TOTAL: | | | | 80.00 | 3,104.80 | 1,036.00 | 40,212.16 |

(Sterner Decl., Ex. 24 at 125). Notwithstanding these omissions, Dyncorp contends that Plaintiff cannot demonstrate injury, as required under Section 226, because Plaintiff can derive the missing information from the data provided on the wage statements using only "grade school math." Dyncorp now moves for summary judgment on that basis.

**II.  Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the

3

moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

Under Labor Code Section 226(a)(9), wage statements must accurately itemize "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ."  Cal. Lab. Code § 226(a)(9). Only an "employee suffering injury" as a result of a deficient wage statement, however, is entitled to recover statutory penalties. Cal. Lab. Code § 226(e)(1).  Dyncorp argues that where, as here, missing information can be ascertained through the application of "grade school math," there is no injury for purposes of Section 226.  See Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1142, 122 Cal. Rptr. 3d 174, 179 (2011) ("The injury requirement . . . cannot be satisfied simply because one of the nine itemized requirements . . . is missing from a wage statement."); Raines v. Coastal Pac. Food Distributors, Inc., 23 Cal. App. 5th 667, 676, 234 Cal. Rptr. 3d 1, 8 (2018) ("[W]here the deficiency in the wage statement could be corrected by 'simple math,' there is no actual injury.").[1]

---

[1] "[T]he animating purpose behind § 226(a), with all its provisions regarding what must be disclosed on wage statements, is employee protection. Intertwined with this purpose is an element of deterrence . . . ."  Magadia v. Wal-Mart Assocs., Inc., 384 F. Supp. 3d 1058, 1095 (N.D. Cal. 2019) (rev'd in part, vacated in part on other grounds, 999 F.3d 668 (9th Cir. 2021)).  "[W]hen the legislation amending the Labor Code and adding section 226(a)(9) was introduced in the California Assembly, it was supported by groups who argued that California employers 'are chronic violators of wage and hour, safety, and tax laws. Such employers . . . cheat workers out of billions of dollars in wages owed to them under minimum wage and overtime laws.'".  York v. Starbucks Corp., No. CV 08-07919 GAF, 2009 WL 8617536, at *10 (C.D. Cal. Dec. 3, 2009) (quoting CAL. ASSEMBLY, COMM. ON LABOR & EMPLOYMENT, BILL ANALYSIS, A.B. 2509 (Steinberg), April 12, 2000.).  Accordingly, courts have often recognized that "the injury requirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute."  Garnett v. ADT LLC, 139 F. Supp. 3d 1121, 1132 (E.D. Cal. 2015) (citation omitted) (collecting cases).  In light of

(continued...)

1    Dyncorp raised a nearly identical argument in a motion to
2  dismiss.  (Dkt. 15.)  As this Court explained when denying that
3  motion, however, Dyncorp's assertion that simple math alone can
4  yield the missing information is simply incorrect.  (Dkt. 19.)  The
5  July 16 statement depicted above, for example, does not list the
6  rate of pay for the itemized categories at all in the "Hours and
7  Earnings" section.[2]  Although a separate portion of the statement
8  does list a pay rate of $35.51 hourly, Dyncorp does not appear to
9  contend that that rate is applicable to the "$Shft 2.05" category,
10  or that the applicable rate can be derived from any other data.
11  The "hours" column is also blank with respect to the "Shft $2.05"
12  category.  Even assuming the rate applicable to "Shft $2.05" is
13  $2.05, it does not appear possible to divine Plaintiff's "Shft
14  $2.05" hours worked from the information on the wage statement.
15  The July 16 statement states that Plaintiff earned $226.32 in "Shft
16  $2.05" pay.  Dividing that figure by $2.05 yields 110.4.  Although
17  the statement does indicate that Plaintiff was paid for 110.4
18  hours, no party contends that Plaintiff actually worked that number
19  of hours, let alone did so at a premium rate of pay.  Similarly, in

21    [1](...continued)
22  these principles, this Court would be disinclined to endorse any
     approach that, rather than enforce the statute as written, would
23  instead require employees to utilize mathematical formulae to suss
     out information that should have been, but was not, itemized on a
24  wage statement pursuant to Section 226(a)(9).  The court notes
     further that neither the California Supreme Court nor any published
25  decision of the Ninth Circuit has spoken to the issue.

26    [2] This wage statement, which ostensibly covers a pay period
     consisting of a single day on July 16, 2019, indicates that
27  Plaintiff worked 52 hours in the "RegularPay" category.  The court
     presumes the date range to be a clerical error, as the preceding
28  pay period ended on July 11, 2019, and Plaintiff could not possibly
     have worked 52 hours in a single day.

the June 13 example above, the wage statement lists $164 of "Shft $2.05" pay.  But dividing that figure by a $2.05 rate yields 80 hours.  Once again, no party contends that Plaintiff worked 80 hours.  Rather, that figure appears to represent a combination of paid personal leave, vacation, "Regular Pay," and "Shft $2.05" hours.

Now, on summary judgment, Dyncorp argues that the "missing fact that dispels this seeming discrepancy" can be gleaned from other documents obtained in discovery, namely, two collective bargaining agreements.  (Mot. at 2:17, 11:28.)  Those agreements indicate that a "shift differential premium" applies to certain types of paid time off, including vacation, holidays, jury duty, and personal paid leave.  (Sterner Decl., Exs. 18-19.)  With that understanding, Dyncorp argues, the information in the wage statements can be used to calculate the number of "Shft $2.05" hours worked and paid.

As an initial matter, even with the benefit of the additional information drawn from the collective bargaining agreements, the calculations required to derive the missing information are not quite as simple as Dyncorp suggests.  Division alone cannot reveal how many "Shft $2.05" hours plaintiff actually worked.  On the July 16 statement, for example, dividing $226.32 in "Shft $2.05" earnings by $2.05 yields 110.4, or the total number of hours for which Plaintiff was paid a premium rate.  As explained above, that figure does not represent the hours worked at the premium rate.  If Plaintiff were to consult the collective bargaining agreements, he would be able to determine that his personal leave and holiday hours were paid not at the $35.71 rate listed for those categories,

but rather at the shift premium rate.  Plaintiff could then total his leave (17.7 + 8) and vacation (32.7) hours, which would yield the number of non-working hours (58.4) paid at the premium rate. Multiplying that number by the premium rate of $2.05, Plaintiff could determine that he received $119.72 in premium pay for non-working hours.  Subtracting that figure from his $226.32 of "Shift $2.05" earnings would yield $106.60 of premium pay for working hours.  Only then could Plaintiff divide by the $2.05 premium rate to finally reveal that he was paid for 52 hours of "Shft $2.05" work at the premium rate.[3]

More importantly, Dyncorp appears to concede that the wage statements are indecipherable without additional information contained within the collective bargaining agreements.  Under Section 226, however, an employee must be able to "promptly and easily determine" the number of hours worked at each applicable rate "<u>from the wage statement alone.</u>"  Cal. Lab. Code § 226(e)(2)(B)(I) (emphasis added).  "'[P]romptly and easily determine' means a reasonable person would be able to readily ascertain the information <u>without reference to other documents or information.</u>"  Cal. Lab. Code § 226(e)(2)(C) (emphasis added).

---

[3] Under the collective bargaining agreements, the premium rate applied to shifts "on which four(4) or more straight time hours of work are regularly scheduled after 3:00 p.m."  On the July 16 wage statement, all of Plaintiff's hours worked appears to have been subject to the premium rate.  Thus, the number of hours Plaintiff worked in the "Shft $2.05" category also happened to be the number of hours worked in the "Regular Pay" category. Had Plaintiff worked some combination of premium and non-premium rate hours, the "Shft $2.05" hours figure derived from the mathematical computations described above would not equal the "Regular Pay" hours worked.

Dyncorp relies heavily upon <u>Raines</u> for the proposition that there is no injury under Section 226 where simple math can yield missing wage statement information.  But the <u>Raines</u> court itself recognized that "a plaintiff is 'injured' 'if the accuracy of any of the items . . . cannot be ascertained from the four corners of the wage statement.'"  <u>Raines</u>, 23 Cal. App. 5th at 676 (quoting <u>Ovieda v. Sodexo Operations, LLC</u>, C.D.Cal., Oct. 3, 2013, No. CV 12-1750-GHK, 2013 WL 12122413 at *3.)).  "An actual injury is shown where <u>there is a need for both additional documentation and additional mathematical calculations</u> in order to determine whether Plaintiffs were correctly paid and what they may be owed."  <u>Id.</u> (internal quotation marks and citation omitted) (emphasis added); <u>see also id.</u> at 677 (" Although many people cannot perform the calculation in their heads, it can be easily performed by use of a pencil and paper or a calculator; <u>no additional documents or information are necessary</u>." (emphasis added)); <u>Hernandez v. BCI Coca-Cola Bottling Co.</u>, 554 F. App'x 661, 662 (9th Cir. 2014) ("Wage statements comply with § 226(a) when a plaintiff employee can ascertain the required information by performing simple math, <u>using figures on the face of the wage statement</u>." (citing <u>Morgan v. United Retail Inc.</u>, 186 Cal.App.4th 1136, 113 Cal.Rptr.3d 10, 19 (2010)) (emphasis added).

In its Reply, Dyncorp argues that Plaintiff need not refer to the union contracts to decipher his wage statements, but rather need only consult them if he wishes to "*verify* that the hours of shift premium paid are subject to a shift premium."  (Reply at 11:14-15.)  The court disagrees with that characterization.  The June 13 statement, for example, reproduced above, lists six different categories of pay, each with a corresponding "Rate" and

"Hours" tally.[4]  Dyncorp appears to implicitly acknowledge, however, that the rate information applicable to the paid leave and vacation categories is not accurate.  Plaintiff was not paid $35.51 per hour for those categories, but rather was paid $37.56 per hour, as required under the collective bargaining agreements.  Only by reference to those agreements could Plaintiff possibly know that, to calculate the actual rates at which vacation and leave hours were paid, he should disregard the listed "Rate" information and add to it a premium shift differential.  Similarly, only by reference to outside information could Plaintiff know to disregard premium shift earnings attributable to non-work categories before dividing those earnings by the shift premium itself to arrive at premium shift hours worked.  Indeed, the only "verification" the agreements appear to provide is verification that the rate (and earnings) information listed on the wage statements is not accurate.

Thus, even assuming Dyncorp is correct that simple mathematical calculations utilizing data within Plaintiff's wage statements could have yielded the required information missing from those statements, Plaintiff could not have known which operations or figures to employ without first consulting extraneous documents. Accordingly, Dyncorps's motion must be denied.

**IV.  Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED.

---

[4] As stated above, the July 16 wage statement does not list rate information for any of the categories of pay listed.

1  IT IS SO ORDERED.

2

3

4  Dated: January 31, 2022

5                                              DEAN D. PREGERSON
                                               United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28