STEVEN B. KATZ (SBN 139078)
  skatz@constangy.com
REMY J. KESSLER (SBN 123165)
  rkessler@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 909-7775
Facsimile:(424) 465-6630

Attorneys for Defendant
DYNCORP INTERNATIONAL LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON DEL FIERRO, individually and on behalf of all other similarly situated,<br><br>  Plaintiff,<br><br>  vs.<br><br>DYNCORP INTERNATIONAL LLC, a Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>  Defendants. | Case No. 2:19-cv-07091 DDP (JCx)<br><br>**OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>DATE:   May 23, 2022<br>TIME:   10:00 a.m.<br>CTRM:   9C |

# TABLE OF CONTENTS

Pages

I. SUMMARY OF OPPOSITION .................................................................... 4

II. MR. DEL FIERRO FAILS TO ADDRESS THE COURT'S CONCERNS ABOUT THE APPLICATION OF THE FEDERAL ENCLAVE DOCTRINE TO THE PUTATIVE CLASS. HE STILL FAILS TO SATISFY TYPICALITY AND PREDOMINANCE ................................................................................ 6

III. THIS COURT SHOULD RECONSIDER ITS RULING THAT TODAY'S § 226 CAN BE APPLIED ON PT. MUGU UNDER *PAUL'S* "MINOR CHANGE" EXCEPTION. MR. DEL FIERRO'S CAUSE OF ACTION FOR DAMAGES WAS CREATED BY THE LEGISLATURE THREE DECADES *AFTER* CALIFORNIA CEDED PT. MUGU ............................................................... 9

IV. CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allison v. Boeing Laser Tech. Servs.*,
  689 F.3d 1234 (10th Cir. 2012) ......................................................... *passim*

*Balla v. Idaho State Bd. of Corrections*,
  869 F.2d 461 (9th Cir. 1989) ...................................................................... 9

*Graves v. Arpaio*,
  623 F.3d 1043 (9th Cir. 2010) .................................................................... 8

*Lew v. The City of Los Angeles*, 2:20-cv-10948-DDP-PLA,
  2022 WL 60592 (C.D. Cal. Jan. 6, 2022) .................................................. 8

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) .................................................................. 10

*Marconi Wireless Telegraph Co. v. United States*,
  320 U.S. 1 (1943) ........................................................................................ 9

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .................................................................................. 10

*Pacific Coast Dairy v. Dep't. of Agric. of Cal.*,
  318 U.S. 285 (1943) .................................................................................. 16

*Paul v. United States*,
  371 U.S. 245 (1963) ........................................................................ *passim*

*Peralta v. Dillard*,
  520 F. App'x 494 (9th Cir. 2013) ............................................................... 9

*Ribot v. Farmers Ins. Gp.*,
  No. CV 11-02404 DDP (FMOx),
  2014 WL 2510883 (C.D. Cal., June 4, 2014) ........................................ 9-10

Statutes

Cal. Labor Code § 226 .................................................................... *passim*

Rules

Fed. R. Civ. Proc. 54(b) ................................................................................ 9

# MEMORANDUM

## I.
### SUMMARY OF OPPOSITION.

When this Court denied Plaintiff Ramon Del Fierro's original class certification motion, it gave him a second chance to demonstrate a "straightforward answer to the question whether some or all of the bases at issues here are federal enclaves, and/or whether [Cal. Labor Code] Section 226(a)(9) applies to those enclaves." (ECF 75, p. 8.)[1] Seven months later, Mr. Del Fierro offers only the blithe assumption that a "federal enclave defense would be inapplicable to any property that became a federal enclave after 1943" when § 226 was first enacted. (ECF 92, p. 9:8-12.) He insists that "[t]he Court previously [so] ruled." (*Id.*) In fact the Court ruled this legal theory "has no merit." (ECF 59, p. 5.) Mr. Del Fierro has still "made virtually no attempt to show whether the federal enclave doctrine applies uniformly to the putative class members." (ECF 75, pp. 6-7.) Class certification should be denied again.

Further, this Court should exercise its inherent powers to revisit its prior ruling that Mr. Del Fierro's lawsuit turns on applying "minor" post-

---

[1] All page numbers in ECF citations refer to the pagination created by the ECF system upon filing (placed in the header on the document), and not the page numbers of the filing party.

cession changes to the law which existed when California ceded Pt. Mugu NAS to the federal government (an exception to the federal enclave doctrine) and hold instead that the doctrine bars his suit. Assuming *arguendo* that § 226(a)(9)'s requirement that wage statements include "all applicable rates . . . [and] hours" represents a "minor" change to § 226 and may be applied on Pt. Mugu under the exception of *Paul v. United States,* 371 U.S. 245 (1963), the creation of a statutory cause of action for minimum (or actual) damages for violations of § 226 (subdivision [e]) some 30 years after California ceded Pt. Mugu is *not.* Mr. Del Fierro's sole cause of action is under § 226(e). (*See, e.g.,* ECF 92, pp. 23-24.) This Court's previous ruling did not take § 226(e) into account. Even if *Paul* permitted application of § 226(a)(9) on Pt. Mugu,[2] it does not permit application of § 226(e).

The immediate consequence of reconsideration is that the Court must find Mr. Del Fierro lacks Article III standing, requiring it to deny class certification and dismiss this lawsuit.

---

[2] Which Defendant DynCorp International LLC contests and does not waive for appeal.

## II.
### MR. DEL FIERRO FAILS TO ADDRESS THE COURT'S CONCERNS ABOUT THE APPLICATION OF THE FEDERAL ENCLAVE DOCTRINE TO THE PUTATIVE CLASS. HE STILL FAILS TO SATISFY TYPICALITY AND PREDOMINANCE.

This Court denied Mr. Del Fierro's original class certification motion (ECF 48) because "[h]aving made virtually no attempt to show whether the federal enclave doctrine applies uniformly to the putative class members", he failed to demonstrate typicality and predominance. (ECF 75, pp. 6-7.) It denied the motion without prejudice, explaining clearly what it required to reconsider the denial:

> "To the extent that base-specific, as opposed to class member specific, inquiries qualify as 'individual' questions, the court cannot determine on the current briefing whether such questions are sufficiently complex to predominate over the common questions in this case. It may be, for example, that there is a relatively straightforward answer to the question whether some or all of the bases at issues here are federal enclaves, and/or whether Section 226(a)(9) applies to those enclaves. As stated above, however, Plaintiff has made no attempt to make such a showing." (*Id.*, pp. 7-8.)

Mr. Del Fierro's "attempt to make such a showing" in his renewed motion is to argue (1) "[t]he Court previously ruled . . . the federal enclave defense would be inapplicable to any property that became a federal enclave after 1943" (ECF 92, p. 9:8-12); and (2) "there are 595 putative class members who worked at properties that did not become federal

enclaves until after 1943." (ECF 92, p. 19:10-20.) (In fact, Mr. Del Fierro's brief shows that only half of the 595 worked on bases California ceded "after 1943." The other half worked on MCAS Miramar and NAWS China Lake, which were ceded *in* 1943. [*Id.,* pp. 19-20.] Even on its face, Mr. Del Fierro's argument supports a class much smaller than he claims.)

This Court has already found that Mr. Del Fierro's premise—"the only relevant question is whether a particular statute existed, in any form, at the time a federal enclave came to be"—"*has no merit*":

> "By Plaintiff's logic, a state could impose an entirely novel legal regime upon a federal enclave simply by amending a pre-existing statute to include new, completely unrelated, provisions." (ECF 59, p. 5 [emphasis added].)

The critical question framed by the Court is whether Mr. Del Fierro relies on provisions in today's § 226 which represent a "relatively minor additional requirement" when compared to the § 226 which existed at cession, or "an 'incursion into a field that was previously unregulated.'" (ECF 59, p. 7 [*quoting Allison v. Boeing Laser Tech. Servs.,* 689 F.3d 1234, 1237 (10th Cir. 2012)].) Mr. Del Fierro does not try to address it.

Mr. Del Fierro has had the benefit of the Court's detailed guidance, multiple extensions, and seven months to produce the showing requested by the Court when it denied his first certification motion without

1  prejudice. He has still "made virtually no attempt to show whether the
2  federal enclave doctrine applies uniformly to the putative class members."
3  (ECF 75, pp. 6-7.) Since "'[i]t is well established that arguments raised for
4  the first time in a reply brief are waived,'" he should not be permitted to
5  finally do so in reply. *Lew v. The City of Los Angeles*, 2:20-cv-10948-DDP-
6  PLA, 2022 WL 60592, *5 n.2 (C.D. Cal. Jan. 6, 2022) (*quoting Graves v.
7  Arpaio*, 623 F.3d 1043, 1048 [9th Cir. 2010]).

But if the Court is inclined to give him yet another chance, then it should revisit its prior ruling concerning applying the federal enclave defense on Pt. Mugu, which failed to consider a critical detail: the cause of action for statutory minimum damages upon which Mr. Del Fierro relies did not exist for some *three decades* after California ceded Pt. Mugu. Assuming *arguendo* that the Court's interpretation of *Paul* (*see* ECF 59, pp. 5-7) is correct, Mr. Del Fierro's lawsuit turns on applying post-cession amendments to § 226 that cannot be fairly characterized as "minor" or "incremental." (*Id.*, p. 6.)

# III.
## THIS COURT SHOULD RECONSIDER ITS RULING THAT TODAY'S § 226 CAN BE APPLIED ON PT. MUGU UNDER *PAUL'S* "MINOR CHANGE" EXCEPTION. MR. DEL FIERRO'S CAUSE OF ACTION FOR DAMAGES WAS CREATED BY THE LEGISLATURE THREE DECADES *AFTER* CALIFORNIA CEDED PT. MUGU.

"Courts have inherent power to modify their interlocutory orders before entering a final judgment" *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 465 (9th Cir. 1989) (*citing Marconi Wireless Telegraph Co. v. United States,* 320 U.S. 1, 47-48 [1943]).[3] This Court should exercise its power to reconsider its ruling that § 226(a)(9) may be applied on Pt. Mugu under the "'minor change' exception in *Paul*." (ECF 59, p. 5.) Doing so would require this Court to deny the present motion for class certification, for two independent reasons:

First, Mr. Del Fierro would lack Article III standing to seek class certification, as argued at length in DynCorp International's original opposition. (*See* ECF 55, pp. 13-14.) "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or

---

[3] *Accord, e.g., Peralta v. Dillard,* 520 F. App'x 494, 495 (9th Cir. 2013) ("A district judge whose interlocutory determination has not been appealed has discretion to decline to follow that earlier decision at a later point in the case.") *See also* FED. R. CIV. PROC. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment.")

controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "If the individual plaintiff lacks [Article III] standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). *See also Ribot v. Farmers Ins. Gp.*, No. CV 11-02404 DDP (FMOx), 2014 WL 2510883, at *11 (C.D. Cal., June 4, 2014) (following *Lierboe*). This Court previously ruled it will not defer consideration of "any questions related to standing, which depend . . . on federal enclave status" until after class certification. (ECF 75, pp. 5-6.)

Second, as discussed above, Mr. Del Fierro's renewed showing is based on the assumption that if an enclave was ceded after § 226's 1943 enactment, then the entire modern code section applies. Reconsideration of this Court's ruling rejects that assumption, and Mr. Del Fierro has still not demonstrated predominance or typicality.

This Court premised its ruling on the conclusion that § 226(a)(9)'s requirement to "include all applicable hourly rates . . . mandated addition of a single line item is no more than an incremental change to an existing regulatory regime, akin to the price floor increase in *Paul*." (ECF 59, p. 7.) Accordingly, "Dyn[C]orp [International] does not and cannot make any . . .

claim" of being "blindsided by the potential application of a theretofore inapplicable body of law . . . . For as long as Point Mugu has existed as a federal enclave, on-base employers have had to comply with California law regulating wage statements." (*Id.*)

A careful examination of the history of § 226 from its initial enactment in 1943 through the amendment in 2000 that finally added § 226(a)(9) undermines the Court's conclusion: First, a major (not "minor") change was made to § 226 in 1976, when, for the first time, wage statements were required to account for *earnings*; before then, it was limited to deductions from wages. Second—and even more decisive—only in 1976 was a private right of action for damages (with a statutory minimum) established; before then, employers could not be sued by employees for § 226 violations.

When § 226 went into effect in 1943, it mandated only for an itemized statement of wage deductions and made no provision for any private right of action for damages:

> Ch. 1027] FIFTY-FIFTH SESSION 2965
>
> CHAPTER 1027
>
> An act to add Section 226 to the Labor Code, relating to wages. — Stats 1937, p. 185, amended
>
> [Approved by Governor June 7, 1943. Filed with Secretary of State June 7, 1943.] — In effect August 4, 1943
>
> *The people of the State of California do enact as follows:*
>
> SECTION 1. Section 226 is added to the Labor Code, to read: — New section
>
> 226. Every employer shall semimonthly or at the time of each payment of wages furnish each of his employees either as a part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing all deductions made from such wages; provided, all deductions made on written orders of the employee may be aggregated and shown as one item. — Itemized statement of wage deductions

Stats.1943, c. 1027, p. 2965, § 1. This is how the statute read when California ceded Pt. Mugu to the federal government in 1944. In 1945, the Legislature made one "minor" change: it added the word "detachable" in front of the phrase "part of the check, draft or voucher." Stats.1945, c. 1140, p. 2179, § 1.

Section 226 did not expand the information required on wage statements until 1963, when it added three new categories of information to "all deductions": "inclusive dates of the period for which the employee is paid"; "the name of the employee or his social security number"; and "the name of the employer." Stats.1963, c. 1080, p. 2540, § 1. Notably, the 1963 version, like the two before it, was concerned solely with accounting for *deductions* from wages. The new categories related solely to identifying the employee and employer, clarifying who was doing the deducting, and from whom. And even more notably, the 1963 version—like the one that existed

when California ceded Pt. Mugu twenty years earlier—still contained no private right of action for damages.

While the amendments through 1963 could be considered "minor" changes, the next amendment in 1976 cannot. First, the 1976 amendment expanded the scope of information required on a wage statement from its original exclusive focus on deductions from pay, to accounting for earnings. But it did *not* require "all applicable hourly rates . . . and the corresponding number of hours" (the sole basis for this suit). It only added "gross" and "net wages earned" to the required categories of information. Stats.1976, c. 832, p. 1899, § 3.

Second, it created a new private right of action for minimum statutory damages for "[a]ny employee suffering injury as a result of a knowing and intentional failure by an employer to comply." Such an employee would be entitled to "actual damages or one hundred dollars ($100), whichever is greater, plus costs and reasonable attorney fees." *Id*. This amendment subjected employers to a form of liability—and a private right of action to enforce it—that did not exist in 1944 when California ceded Pt. Mugu.

Having established the expanded scope of disclosure requirements and backed them up with a new private right of action, for the next 24

years the Legislature returned to arguably "minor" changes to the 1976 version of § 226. The 1978 amendment added "address" to "name of the employer." Stats.1978, c. 1247, p. 4059, § 3. The 1984 amendment added an exclusion for governmental subdivisions and entities. Stats.1984, c. 486, p. 1990, § 1. The 1987 amendment added an exclusion for homeowners employing casual laborers such as housekeepers, gardeners, babysitters and the like. Stats.1987, c. 976, p. 3265, § 1. The 1988 amendment provided employees the right to inspect and records on request. Stats.1988, c. 827, p. 2677, § 1.

Only in 2000—56 years after California ceded Pt. Mugu to the federal government—did the Legislature finally add § 226(a)(9) to require "all applicable rates . . . [and] hours". Stats.2000, c. 876, p. 6508 § 6. Only since 2000 has this lawsuit been possible.

In its prior ruling, the Court concluded that "circumstances here are far closer to those in *Paul* than to those in *Allison*." (ECF 59, p. 6.) In *Allison*, "a plaintiff sought to extend employment related common law causes of action onto a federal enclave, even though the common law causes of action were not recognized under state law until *after* the establishment of the enclave." (*Id.* [emphasis in original].) "Thus, while the employer in *Allison* might have been blindsided by the potential

application of a theretofore inapplicable body of law, DynCorp [International] does not and cannot make any similar claim here." (*Id.*, p. 7.) But DynCorp International can, and does, make exactly the same claim. Whether statutory or common law, applying on Pt. Mugu a cause of action for damages that did not exist at the time of cession leaves DynCorp International "blindsided by the potential application of a theretofore inapplicable body of law." (*Id.*, p. 7.)

*Allison* involved an implied employment contract plaintiff sought to enforce on a New Mexico federal enclave. While New Mexico common law recognized various types of implied contracts before the enclave was ceded in 1954, it did not recognize implied *employment* contracts until 1980. *Allison*, 689 F.3d at 1243. The plaintiff argued the expansion of implied contract doctrine to employment is the sort of "minor change" permitted by *Paul*. Justice Gorsuch, writing for the Tenth Circuit panel, rejected that argument, holding that *Paul* announced a "limited rule" that requires a "narrow interpretation." *Id.*[4] Here, as in *Allison*, Mr. Del Fierro seeks to

---

[4] *Paul* was concerned with "state *regulatory schemes* that were in place when the state ceded sovereignty but required ongoing maintenance from a regulatory body." *Id.* at 1238 (emphasis added). It permitted only "minor" post-cession "changes" in such "ongoing" . . . regulatory "maintenance" to be applied. *Id.* DynCorp International preserves for

apply on a federal enclave a new cause of action with damages that was created decades after cession. If it made no difference in *Allison* that the new cause of action was an elaboration of pre-cession law, it should make no difference here.

And while the circumstances here are indistinguishable from those in *Allison*, they are quite different from those in *Paul*. In 1937, the California Legislature enacted former Agriculture Code §§ 736.10, *et seq.* (later recodified as § 4350), which authorized the state Director of Agriculture "to prescribe and enforce minimum retail prices . . . for milk or fluid cream . . . ." Stats.1937, c. 413, p. 1373, § 2a. The Director established regulations setting price floors, which were from time to time amended to meet market conditions. In *Pacific Coast Dairy v. Dep't. of Agric. of Cal.*, 318 U.S. 285 (1943), the Supreme Court held that the Director's price floor regulations could not be enforced on Moffet Field, which had been ceded six years before §§ 736.10, *et seq.*, had been enacted. But in *Paul* it held that the regulations could be enforced on Travis AFB, Castle AFB and Oakland Army Terminal, all of which were ceded after enactment of §§ 736.10, *et seq.* That the state sought to enforce price floor regulations

---

appeal its prior position that *Paul* has no application of statutory amendments, but does not press the point here.

that had been modified after cession did not matter, as long as the statutory authority for those regulations—what *Paul* called the "basic state law"—was created before cession. *See Paul*, 371 U.S. at 268-69.

Here, the "basic state law" which existed when California ceded Pt. Mugu required wage statements accounting for deductions only, and there was no private right of action for actual or minimum damages for noncompliance. In 1976—decades after cession—the "basic state law" was changed to require accounting for earnings, and private right of action for damages was created for the first time. This case is more like *Allison* than *Paul*. This Court's previous ruling appears to have been reached without consideration of the introduction of a private right of action in 1976, which substantially changed the statutory scheme after Pt. Mugu became a federal enclave. It should reconsider that conclusion, as it goes to the heart of the question posed by the Court when it denied Mr. Del Fierro's first class certification motion: whether some or all of the bases at issues here are federal enclaves, and whether Section 226(a)(9) applies on those enclaves.

## IV.
## CONCLUSION.

For the reasons set forth above, this Court should reconsider its prior federal enclave ruling, deny Mr. Del Fierro's renewed motion for class certification, and dismiss his action.

Dated: May 2, 2022

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By: _____
Steven B. Katz

Attorneys for Defendant
DYNCORP INTERNATIONAL LLC