O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAMON DEL FIERRO, | ) | Case No. CV 19-07091 DDP (JCx) |
| Plaintiff, | ) ) ) | **ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION** |
| v. | ) ) | |
| DYNCORP INTERNATIONAL LLC, | ) ) | [Dkt. 92] |
| Defendants. | ) ) | |

Presently before the court is Plaintiff Ramon Del Fierro's renewed Motion for Class Certification (Dkt. 92). Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I.  Background**

As recounted in this Court's earlier Orders, Plaintiff worked for Defendant Dyncorp International LLC ("Dyncorp) at the Point Mugu Naval Air Station ("Point Mugu") from December 2016 to July 2019. (Complaint ¶ 8.) Plaintiff alleges, on behalf of a putative class, that Dyncorp violated California Labor Code § 226 by failing to provide wage statements that accurately identified the

applicable rate of pay and hours worked for certain "shift premiums."[1] (Compl. ¶ 30.)

Plaintiff previously moved to certify a class comprised of "all current and former California non-exempt employees of Defendant DynCorp International, LLC ("Defendant") who were paid any shift premium wages (including certification premiums) at any time from August 14, 2018, through the date that the class is certified." (Dkt. 48) Many putative class members, however, were employed by Dyncorp at other California locations, including military bases other than Point Mugu. These varying work locations potentially implicated the "federal enclave" doctrine, which generally provides that "when an area in a State becomes a federal enclave, 'only the state law in effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." Parker Drilling Mgmt. Servs., Ltd. v. Newton, 139 S. Ct. 1881, 1890 (2019) (quoting James Stewart & Co. v. Sadrakula, 309 U. S. 94, 100 (1940) (internal alteration omitted)). Subsequent, relatively minor changes to existing state law may also apply to federal enclaves. Paul v. United States, 371 U.S. 245, 269 (1963).

This Court concluded that Plaintiff had failed to show that the federal enclave doctrine would apply uniformly to all the locations at which putative class members worked, and that Plaintiff had thus failed to demonstrate that the class certification requirements of Federal Rule of Civil Procedure 23

---

[1] More specifically, Section 226(a)(9) requires that wage statements accurately itemize "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." Cal. Lab. Code § 226(a)(9).

2

were met.  In other words, because the various work locations became federal enclaves at different times, Section 226 might apply to some Dyncorp employees, but not others, and individual questions might thus predominate.  Accordingly, the court denied Plaintiff's Motion for Class Certification, without prejudice.

Plaintiff now brings a renewed Motion for Class Certification. Plaintiff's renewed motion seeks certification of a different class, comprised of "All current and former non-exempt employees of [Dyncorp] who were paid any shift premiums . . . and did not work at a property that became a federal enclave before 1943 . . . ." (Renewed Mot. at 2.)

## II. Legal Standard

A party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.  See Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992).  Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508.  These four requirements are often referred to as numerosity, commonality, typicality, and adequacy.  See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982).

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule

3

23 are met.  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178 (1974).  This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23 requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail.  <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011); <u>see also</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350-51 (2011).

Rule 23(b) defines different types of classes.  <u>Leyva v. Medline Indus. Inc.</u>, 716 F.3d 510, 512 (9th Cir. 2012).  Plaintiff here seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over individual questions . . . and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**III. Discussion**

As with Plaintiff's initial motion for class certification, several of the Rule 23 factors are not in dispute.  Dyncorp appears to concede, for example, that the putative class includes approximately 300 members, if not more.[2]  (Opposition at 7.)  And, as before, there is at the very least a common question as to whether each class member received accurate and adequate wage statements.  <u>See</u> <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981 (9th Cir.2011) ("The requirements of Rule 23(a)(2) have been

---

[2] The Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement. <u>Harik v. Cal. Teachers Ass'n</u>, 326 F.3d 1042, 1051 (9th Cir. 2003); <u>Davis v. Four Seasons Hotel Ltd.</u>, 277 F.R.D. 429, 435 (D. Hawaii 2011).

4

construed permissively, and all questions of fact and law need not be common to satisfy the rule.") (internal quotation marks and brackets omitted).

Indeed, of the Rule 23 factors, Dyncorp's opposition mentions only two: typicality and predominance. (Opp. at 5.) The substantive basis of Dyncorp's opposition, however, is not entirely clear. Dyncorp correctly observes that this Court rejected Plaintiff's theory that the only question relevant to a federal enclave analysis is whether a particular statute existed, in any form, at the time a federal enclave came into being. As the court explained, "[b]y Plaintiff's logic, a state could impose an entirely novel legal regime upon a federal enclave simply by amending a pre-existing statute to include new, completely unrelated provisions." (Dkt. 59 at 5.) Quoting this conclusion, Dyncorp asserts that Plaintiff has again failed to show that the federal enclave doctrine applies uniformly to the proposed class, thus implicating the predominance and typicality factors. (Opp. at 8.)

Plaintiff's earlier mischaracterization of the federal enclave doctrine, however, is not repeated in Plaintiff's current motion, and appears to have little bearing on the uniformity of the revised proposed class. Section 226 took effect in June 1943. Plaintiff's proposed class does not include any Dyncorp employees who worked on bases that became federal enclaves prior to that date. Nor does the class include any Dyncorp employees who worked on bases that became federal enclaves after 1961.[3] Thus, it

---

[3] Dyncorp contends that Section 226 underwent a significant
(continued...)

5

appears that Section 226 will apply equally to all putative class members, either directly or by way of the federal enclave doctrine, that common issues therefore predominate, and that Plaintiff is an adequate class representative.

The bulk of Dyncorp's opposition makes clear that Dyncorp does not oppose class certification so much as it seeks reconsideration of this Court's order denying Dyncorp's motion for judgment on the pleadings. (Dkt. 59.) Indeed, Dyncorp's opposition to Plaintiff's class certification repeatedly and explicitly urges this Court to "reconsider its ruling that § 226(a)(9) may be applied on Pt. Mugu." (Opp. at 9.) In its motion for judgment on the pleadings, Dyncorp contended that, because Point Mugu became a federal enclave after the enactment of Section 229 but before the addition of Section 226(a)(9), only the former's requirements apply to Plaintiff's wage statements. This Court disagreed, recognizing that courts have applied an exception to the federal enclave doctrine and applied state law to federal enclaves "where minor regulatory changes modify laws existing at the time of cession." Allison v. Boeing Laser Tech. Servs., 689 F.3d 1234, 1237 (10th Cir. 2012) (citing Paul, 371 U.S. at 269). As the court explained,

> "[f]or as long as Point Mugu has existed as a federal enclave, on-base employers have had to comply with California law regulating wage statements. Although the requirement under Section 226(a)(9) that wage statements include all applicable hourly rates paid is undoubtedly a post-handover change, the mandated addition of a

---

[3](...continued)
transformation in 1976. (Opp. at 11.) Even if Dyncorp were correct, any associated defense would apply equally to all military bases at issue here, all of which were federal enclaves prior to 1976.

6

         single line item is no more than an incremental change to an existing regulatory regime . . . . The federal enclave doctrine does not, therefore, bar Plaintiff's sole claim under [§ 226]."

(Dkt. 59 at 7).

At no point, however, has Dyncorp filed a motion seeking reconsideration of the court's prior order, let alone filed such a motion within the proper time period. See C.D. Cal. L.R. 7-18 ("Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application."). Courts have routinely observed that motions for reconsideration in the guise of oppositions are improper. See, e.g., Hershewe v. JOYY Inc., No. 2:20-CV-10611-SB-AFM, 2022 WL 1123208, at *2 (C.D. Cal. Mar. 9, 2022); Sweeney v. Chang, No. 216CV07240CASRAOX, 2019 WL 1431583, at *3 n.5 (C.D. Cal. Mar. 26, 2019); Stafford v. Brink's, Inc., No. CV1401352MWFPLAX, 2016 WL 6306037, at *5 (C.D. Cal. Feb. 23, 2016); Gray v. Ocwen Mortg. Servicing, Inc., No. 18-CV-01864-JD, 2020 WL 1503688, at *1 (N.D. Cal. Mar. 30, 2020); Victorino v. FCA US LLC, No. 16CV1617-GPC(JLB), 2018 WL 2149223, at *4 (S.D. Cal. May 10, 2018); Gill v. Dep't of Just., No. 14-CV-03120-RS, 2015 WL 13466143, at *1 n.1 (N.D. Cal. Aug. 14, 2015); 625 3rd St. Assocs., LP v. Alliant Credit Union, No. C 09-00564 WHA, 2009 WL 3517608, at *5 (N.D. Cal. Oct. 26, 2009). Furthermore, Dyncorp has identified no "material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known" earlier, or any "manifest

showing of failure to consider material facts presented to the Court."[4]  C.D. Cal. L.R. 7-18.

Defendant's supplemental opposition appears to suggest that reconsideration is warranted because a California Court of Appeal decision disagreeing with this Court's "minor change" conclusion constitutes a change in fact or law, and that the Court of Appeal's decision must be given preclusive effect. (Second Supplemental Opposition at 2.) Even putting aside the procedural impropriety of Defendant's argument, the court is not persuaded.

As an initial matter, Defendant underpins its argument with a citation that is disingenuous at best. Quoting AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1151 (9th Cir. 2007), Defendant argues that "whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue." (Supplemental Opposition at 6). The full quote, however, reads, "Indeed, the Supreme Court has rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court merely because whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue. Amerisource, 495 F.3d at 1151 (emphasis added).

Although Defendant does not now urge, and has not previously asked, this Court to abstain, neither does Amerisource support Defendant's suggestion that collateral estoppel somehow

---

[4] The court sees no reason, for example, why Defendant's contention that the creation of a private right of action constituted a "major change" could not have been raised earlier. (Opp. at 11.).

8

automatically applies whenever a state court rules on an issue first.  In general, the doctrine of collateral estoppel bars re-litigation of an identical issue in a separate action when the issue was (1) actually litigated, (2) to a final judgment on the merits, (3) by or against the same party or its privies, after (4) a full and fair opportunity to litigate. <u>Kendall v. VISA U.S.A., Inc.</u>, 518 F.3d 1042, 1050 (9th Cir. 2008).  Where parallel state and federal proceedings are involved, however, <u>Amerisource</u> explained that, as a general rule, "each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.  Whenever a judgment is rendered in one of the courts . . ., the effect of that judgment is to be determined by the application of the principles of res judicata and collateral estoppel by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case." <u>Amerisource</u>, 495 F.3d at 1152 (internal alterations omitted).

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in <u>subsequent suits</u> based on a different cause of action involving a party to the prior litigation." <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979) (emphasis added).  Even then, however, exceptions may apply. <u>Id.</u> at 155.  Here, the instant action was filed in this court prior to the state court action, and this court concluded that the <u>Paul</u> minor change exception allows the application of Section 226 within Point Mugu before the state court ever reached the opposite

9

conclusion. Defendant does not cite to, nor is the court aware of, any case in which preclusive effect has been granted to a later-decided decision in a later-filed case simply because the later-filed case proceeds to final judgment first. Furthermore, Defendant does not dispute that the extent of federal jurisdiction over a federal enclave presents a federal question, nor that state court determinations regarding such questions are not binding on federal courts. See Paul, 371 U.S. at 267 (quoting Silas Mason Co. v. Tax Comm'n of State of Washington, 302 U.S. 186, 197 (1937)). Under these circumstances, this Court will not sua sponte revisit its earlier decision regarding the applicability of Section 226.

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion to Certify Class is GRANTED.

IT IS SO ORDERED.

Dated: November 3, 2022

DEAN D. PREGERSON
United States District Judge