Larry W. Lee (State Bar No. 228175)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Telephone: (213) 488-6555
Facsimile: (213) 488-6554
Email: lwlee@diversitylaw.com

Edward W. Choi, Esq. SBN 211334
**LAW OFFICES OF CHOI & ASSOCIATES**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885
Email: Edward.Choi@choiandassociates.com

Attorneys for Plaintiff and the Class
[Additional Counsel on Next Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON DEL FIERRO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> DYNCORP INTERNATIONAL LLC, a Limited Liability Company; and DOES 1 through 50, inclusive <br><br> Defendants. | Case No.: 2:19-cv-07091-DDP-PJW <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:        May 13, 2024 <br> Time:        10:00 a.m. <br> Courtroom:  9th Floor, 9C <br> Judge:        Hon. Dean D. Pregerson |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION

## <u>ADDITIONAL COUNSEL</u>

Dennis S. Hyun (State Bar No. 224240)
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 488-6555
Facsimile: (213) 488-6554
Email: dhyun@hyunlegal.com

WILLIAM L. MARDER, ESQ. (CBN 170131)
**POLARIS LAW GROUP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Telephone: (831) 531-4214
Facsimile: (831) 634-0333
Email: bill@polarislawgroup.com

Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 13, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 9C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012 before the Honorable Dean D. Pregerson, Plaintiff Ramon Del Fierro ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $173,527.33 (33 1/3% of the Gross Settlement Amount) and reimbursement of costs in the amount of $22,141.86; and (3) approving Plaintiff's request for an enhancement award of $10,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant DynCorp International LLC ("Defendant"), Defendant will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Edward W. Choi, Dennis S. Hyun, Plaintiff Ramon Delfierro, and Taylor Mitzner of Phoenix Settlement Administrators, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED: April 15, 2024      LAW OFFICES OF CHOI & ASSOCIATES

                By: _____/s/ Edward W. Choi_____
                     Edward W. Choi
              Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................10

II.   LITIGATION HISTORY .....................................................11

    A.    Factual and Procedural Background.................................11

    B.    The Court Granted Preliminary Approval of the Settlement.........15

    D.    The Settlement Class ................................................15

    E.    Scope of the Released Claims.........................................16

    F.    Monetary Relief Under the Settlement ...............................16

    G.    Service Payment to Plaintiff ........................................17

    H.    Attorney's Fees and Costs............................................17

    I.    Settlement Administration Costs......................................17

III.  FINAL CLASS CERTIFICATION OF THE CLASS IS APPROPRIATE ...................................................................18

IV.   CLASS MEMBERS WERE PROVIDED PROPER NOTICE OF THE SETTLEMENT...............................................................18

V.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL .................................................................19

    A.    The Strength of Plaintiff's Case Supports Settlement ....................20

    B.    Risks, Expense, and Duration of Continued Litigation Supports Settlement ..........................................................21

    C.    The Settlement Amount Favors Settlement ......................................21

    D.    The Extent of Discovery Favors Settlement ......................................22

    E.    The Recommendations of Counsel Favor Approval of the Settlement ..........................................................22

    F.    The Class Has Responded Favorably to the Proposed Settlement .23

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION

G.    The Procedure Through Which the Settlement Was Achieved
Supports Final Approval ...........................................................................24

VI.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE
APPROVED ............................................................................................26

A.    Attorneys' Fees in Common Fund Cases ...........................................26

1.    The Court Should Award Fees Based on the Percentage of the
Recovery............................................................................................... 26

2.    Class Counsel Satisfies the Criteria for a Common Fund Award ..........30

B.    The Lodestar Calculation "Cross-Check" .................................32

C.    The Court Should Approve the Request for Reimbursement of
Costs .......................................................................................................35

VII.    PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED .............35

VIII.    SETTLEMENT ADMINISTRATION COSTS SHOULD BE
APPROVED ............................................................................................37

IX.    CONCLUSION ......................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**Statutes**

California Civil Code § 1542 ................................................................17

Labor Code § 226 ............................................................... 11, 14, 15

Labor Code § 226(e) ........................................................................35

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2002) ......................................................................................21

4 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) ................25

4 *NEWBERG ON CLASS ACTIONS*, at §11.45 ......................................21

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) .........................24

*Manual For Complex Litigation* (Fourth) § 30.42) ..............................25

Newberg on Class Actions, Fourth Edition, vol. 4, p. 556, §14.6 ..........27

**Rules**

Fed R. Civ. P. 30(b)(6) ......................................................................15

Fed. R. Civ. P. 12(c) .........................................................................11

Fed. R. Civ. P. 23(a) .........................................................................18

Fed. R. Civ. P. 23(e) .........................................................................19

**Federal Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) ...................22

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ...............................26

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ............................... 25, 26, 27

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ...........22

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ..............36

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) . 26, 30

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ..............26

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION

*Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016)...................................................................28

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) 20, 22, 23, 24

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) ....................23

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).............................19

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ........................................................................... 20, 21, 22, 23

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ..................22

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ............................................29

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ...............................................................................................28

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1998), 632 ...........34

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)...............................................27

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007) .................................................................................................. 26, 36

*Guynn-Neupane*, 2021 WL 4481661 (N.D. Cal. Sep. 30, 2021)......................31, 32

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) .............. 19, 20, 24

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).................27

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) ....................................................................................................36

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ...................22

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ........23

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)...30

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) ........................27

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721
(D.N.J. 2000). ...................................................................................32

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881)...........26

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ...........................................19

*Ketchum vs. Moses*, 24 Cal.4th 1122, 1133 (2001) ................................................34

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ...............................22

*Laffitte v. Robert Half Int'l*, 1 Cal.5th 480, 503 (2016)................................... 28, 29

*Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871......................29

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No.
166) ..............................................................................................29

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)................25

*Magadia v. Wal-Mart*, 999 F.3d 668 (2021)..................................................... 31, 32

*McKenzie v. Federal Express Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2,
2012 .............................................................................................21

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)................................................26

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28,
2013).............................................................................................20

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)....................33

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*,
688 F.2d 615, 625 (9th. Cir. 1982) ......................................................... 23, 25

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999)............23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)..............................19

*PLCM Group, Inc.*, 22 Cal. 4th 1084 (2000), 1095 ................................................34

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) ..........29

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)........................24

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) ...............................26

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ......................................35

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at \*11 (9th Cir. May 11, 2016) .................................................................................................... 27, 33

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) .................................................................................................................36

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047 ................... 28, 30

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App.4th 440, 447 (2000)........34

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) .................................................................................................................26

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55) .........................................................................29

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

## I.    INTRODUCTION

Plaintiff Ramon Del Fierro ("Plaintiff") seeks final approval of a class-wide settlement reached between Plaintiff and Defendant DynCorp International LLC ("Defendant") (Plaintiff and Defendant collectively, the "Parties").

On December 12, 2023, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). (Dkt. No. 144.). After the Court granted Preliminary Approval, Defendant provided the Settlement Administrator the class data.  (Declaration of Taylor Mitzner on behalf of Settlement Administrator ("Admin Decl.") ¶4).

The settlement provides for a settlement fund of Five Hundred Thousand Dollars ($500,000.00) ("Gross Settlement Amount").  (Dkt. No. 140-2, Class Action Settlement Agreement ("Settlement Agreement" or "Settlement").  The Settlement reached at mediation was based on an estimate of 14,391 wage statements reflecting current shift differential pay received by Class Members. (*Id.* at ¶77).  The Parties agreed that in the event that additional such wage statement issued to class members from July 10, 2023 through the date the Court issues an order granting preliminary approval of the Settlement increases that total above 15,111, the Gross Settlement Amount will increase at the rate of $33.09 per wage statement over 15,111.  (*Id.*).

The class data provided to the Settlement Administrator revealed that there are 15,733 Wage Statements, which is an increase of 622 Wage Statements and additional amount due for the Gross Settlement Amount is $20,581.98 (622 Wage Statements X $33.09).  (*Id.* at ¶13).  Accordingly, the Gross Settlement Amount is to be increased to $520,581.98 ("Adjusted Gross Settlement Amount," or "Adjusted GSA").

Based on the Adjusted Gross Settlement Amount, Plaintiff seeks an order approving Class Counsel's application for attorneys' fees in the amount of

$173,527.33 (33 1/3% of the Adjusted GSA, reimbursement of actual litigation costs in the amount of $22,141.86, and Plaintiff's application for an enhancement award of $10,000.00.

This settlement is non-reversionary, such that no monies will revert back to Defendant. As such, there was no claims process involved. Class Members were given an opportunity to object or opt-out of the settlement. To date, there have been zero (0) opt-outs or objections to the settlement. (Admin Decl. ¶¶ 9-10.) Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement as there is a 100% participation rate and not a single objection from the 681-member class. Moreover, all of the Court's orders concerning dissemination of the Class Notice have been followed. Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.    LITIGATION HISTORY

### A. Factual and Procedural Background

On August 14, 2019, Plaintiff filed his Class Action Complaint against Defendant in the Central District of California.  The Complaint asserts single cause of action for violation of California Labor Code § 226 arising from Defendant's failure to list the rates and hours for shift differential wage payments.

On December 28, 2020, Defendant raised the Federal Enclave Doctrine by filing a motion for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). (Dkt. No. 47).  On January 27, 2021, the District Court issued its Order Denying Defendant's motion for judgment on the pleadings:

> **Dyncorp does not dispute that Section 226 has regulated the form and substance of wage statements since 1943, <u>prior to the establishment of the Point Mugu Federal Enclave</u>**. Thus, while the employer in Allison might have been blindsided by the potential application of a theretofore inapplicable body of law, Dyncorp does not and cannot make any similar claim here. **<u>For as long as Point Mugu has existed as a Federal Enclave, on-base employers have had to</u>**

---

**comply with California law regulating wage statements**. Although the requirement under Section 226(a)(9) that wage statements include all applicable hourly rates paid is undoubtedly a posthandover change, the mandated addition of a single line item is no more than an incremental change to an existing regulatory regime, akin to the price floor increase in Paul. This relatively minor additional requirement hardly constitutes a new body of substantive law or an "incursion into a field that was previously unregulated." **The Federal Enclave doctrine does not, therefore, bar Plaintiff's sole claim under California Labor Code Section 226.**

(Dkt. No. 59 at pp. 6-7, emphasis added.)

On December 29, 2020, Plaintiff filed his initial Motion for Class Certification. (Dkt. No. 48). On September 24, 2021, the District Court issued an Order Denying Plaintiff's Motion to Certify Class, *Without* Prejudice ("Order Denying Certification"). (Dkt. No. 75). Specifically, the District Court denied Plaintiff's Motion on the basis that Plaintiff failed to address whether the putative class members worked for Defendants on federal properties that were subject to the federal enclave defense with respect to the claims pursued by Plaintiff. (*See* Dkt. No. 75).

On February 1, 2022, the District Court denied Defendant's Motion for Summary Judgment, finding that Defendant's wage statements it issued to its employees failed to properly list the applicable hours worked for the Shift Premiums:

> As this Court explained when denying that motion, however, Dyncorp's assertion that simple math alone can yield the missing information is simply incorrect. (Dkt. 19.) The July 16 statement depicted above, for example, does not list the rate of pay for the itemized categories at all in the "Hours and Earnings" section.2 Although a separate portion of the statement does list a pay rate of $35.51 hourly, Dyncorp does not appear to contend that that rate is applicable to the "$Shft 2.05" category, or that the applicable rate can be derived from any other data. The "hours" column is also blank with respect to the

"Shft $2.05" category. Even assuming the rate applicable to "Shft $2.05" is $2.05, it does not appear possible to divine Plaintiff's "Shft $2.05" hours worked from the information on the wage statement. The July 16 statement states that Plaintiff earned $226.32 in "Shft $2.05" pay. Dividing that figure by $2.05 yields 110.4. Although the statement does indicate that Plaintiff was paid for 110.4 hours, no party contends that Plaintiff actually worked that number of hours, let alone did so at a premium rate of pay.

**Dyncorp appears to concede that the wage statements are indecipherable without additional information contained within the collective bargaining agreements.** Under Section 226, however, an employee must be able to "promptly and easily determine" the number of hours worked at each applicable rate "from the wage statement alone." Cal. Lab. Code § 226(e)(2)(B)(I) (emphasis added). "'[P]romptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C).

Thus, even assuming Dyncorp is correct that simple mathematical calculations utilizing data within Plaintiff's wage statements could have yielded the required information missing from those statements, **Plaintiff could not have known which operations or figures to employ without first consulting extraneous documents.**

(Dkt. No. 86 at 6, 8, 10 (emphasis added)).

On April 14, 2022, Plaintiff filed his renewed Motion for Class Certification. On November 3, 2022, the District Court granted Plaintiff's renewed Motion for Class Certification and certified the class: "[a]ll current and former non-exempt employees of [Dyncorp] who were paid any shift premiums . . . and did not work at a property that became a federal enclave before 1943." (Dkt. No. 108 at 3). The District Court noted that the federal enclave defense would apply equally or not to all class members as defined by Plaintiff:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

Section 226 took effect in June 1943. Plaintiff's proposed class does not include any Dyncorp employees who worked on bases that became federal enclaves prior to that date. Nor does the class include any Dyncorp employees who worked on bases that became federal enclaves after 1961. **Thus, it appears that Section 226 will apply equally to all putative class members, either directly or by way of the federal enclave doctrine, that common issues therefore predominate, and that Plaintiff is an adequate class representative**. The bulk of Dyncorp's opposition makes clear that Dyncorp does not oppose class certification so much as it seeks reconsideration of this Court's order denying Dyncorp's motion for judgment on the pleadings. (Dkt. 59.) Indeed, Dyncorp's opposition to Plaintiff's class certification repeatedly and explicitly urges this Court to "reconsider its ruling that § 226(a)(9) may be applied on Pt. Mugu." (Opp. at 9.)

(Order at 5-6, emphasis added).

On November 15, 2022, Defendant filed its Petition for Permission to Appeal from Judge Pregerson's Order Granting Class Certification. After full briefing on Defendant's Petition, on January 30, 2023, the Ninth Circuit denied Defendant's petition for permission to appeal.

Thereafter, Plaintiff filed his Motion to Send Class Notice on February 9, 2023. (Dkt. No. 112). After full briefing, the Court granted Plaintiff's Motion on May 5, 2023. (Dkt. No. 127). On June 22, 2023, the class notice process was completed and the class consists of 682 class members. (Lee Decl. ¶ 10).

The Parties subsequently agreed to private mediation. (Lee Decl. ¶ 11). The Parties also stipulated that Defendant would provide a verified discovery response as to the number of wage statements each class member received, which was served on July 10, 2023. (*Id.*) Thereafter, the Parties mediated the matter with Michel Loeb, Esq., on August 16, 2023. (*Id.* ¶ 12). The case did not settle at

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

mediation, but with Mr. Loeb's help, the Parties settled the case through acceptance of Mr. Loeb's mediator's proposal on August 23, 2023.  (*Id.*)

Defendant contends that its wage statements comply with the requirements of Labor Code § 226 and that Plaintiff suffered no injury as a result of any alleged noncompliance.

As set forth herein, the Parties have engaged in formal litigation, including numerous dispositive motions, written discovery, and the completion of Defendant's FRCP 30(b)(6) witness deposition.  (Lee Decl. ¶ 8).

**B. The Court Granted Preliminary Approval of the Settlement**

On December 12, 2023, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). (Dkt. No. 144.)

**C. SUMMARY OF THE PROPOSED SETTLEMENT**

The Settlement terms were summarized in detail in the Motion for Preliminary Approval (Dkt. No. 140), and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement, and the Order Granting Preliminary Approval of Class Action and PAGA Settlement. (Dkt. Nos. 140-2 & 144) The principal terms are set forth below.

**D. The Settlement Class**

The Settlement Class is comprised of:

> all current and former non-exempt employees of DynCorp International who were paid any shift premiums for work at Marine Corps Air Station Miramar, Naval Air Station Lemoore, Naval Air Weapons Station China Lake, Naval Base Ventura County (Pt. Mugu), and National Training Center/Ft. Irwin at any time from August 14, 2018 through November 3, 2022.

(Settlement Agreement ¶ 4.). There are 681 Settlement Class Members. (Admin

Decl. ¶ 6.)

### E. Scope of the Released Claims

The release for Settlement Class Members is limited to only the claims alleged in the operative complaint as follows:

> On the date Defendant fully funds the Gross Settlement Amount, Plaintiff and Class Members are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successor, and assigns, the Released Parties from all claims that were alleged, or that reasonably could have been alleged, in the Lawsuit based the facts stated in the Operative Complaint, including all claims for failure to provide accurate, itemized wage statements ("Released Claims"). Class Members shall release the Released Claims for the entire Class Period, and the judgment on this Settlement for all Class Members who do not opt-out of this Settlement.

(Settlement Agreement ¶ 71.)

### F. Monetary Relief Under the Settlement

Based on the Adjusted GSA, the Net Settlement Amount of $304,912.79 available to pay Settlement Class Members was determined by subtracting the requested Class Counsel attorneys' fees ($173,527.33), and Class Counsel costs ($22,141.86), requested Enhancement Payment to Plaintiff Del Fierro ($10,000.00), and the requested Settlement Administration Costs ($10,000.00) from the Adjusted GSA ($520,581.98). (Admin Decl. ¶¶ 12-14).

No claim forms were necessary for any Class Member to participate in the settlement and receive their share of the settlement. Thus, any Class Member who did not opt-out in connection with this settlement will automatically receive his/her share of the settlement proceeds. On average, each Settlement Class Member will receive an average gross payment of approximately $447.44. (Admin Decl. ¶ 15.) The highest individual settlement payment to be paid will be approximately

$1,085.31. (*Id.*). Any remaining monies from uncashed checks will be paid to the California State Controller's Office in the name of the individual Participating Class Member. (Settlement Agreement ¶60).

### G. Service Payment to Plaintiff

Plaintiff applies for a Class Representative Service Award in the amount of $10,000.00. (Settlement Agreement ¶ 65) This amount is to compensate Plaintiff for his efforts and work in prosecuting this case, participating in discovery, meeting and communicating with his counsel, reviewing the pleadings and documents in this case, and for executing a general release of all his claims, including under California Civil Code § 1542. (Declaration of Ramon Del Fierro ("Del Fierro Decl.") ¶¶ 5, 7-8.)  The propriety of the requested enhancement payment is discussed in greater detail below. Class Members have been apprised of Plaintiff's request for a Class Representative Enhancement Payment, as well as their ability to obtain a copy of the Settlement Agreement, and to object to said request if they so desire. (Admin Decl. ¶ 6, Ex. A.) Not a single Class Member objected to the requested enhancement payment. (*Id.* ¶ 10.)

### H. Attorney's Fees and Costs

Class Counsel applies for an award of attorneys' fees of one-third of the Adjusted GSA in the amount of $173,527.33, as well as declared litigation costs in the amount of $22,141.86 in connection with the prosecution of this Class Action. The propriety of the sought fees and costs are discussed in greater detail below. Class Members have been apprised of Class Counsel's request for attorney's fees, as well as their ability to obtain a copy of the Settlement Agreement, and to object to said request if they so desire. (Admin Decl. ¶ 6, Ex. A.) Not a single Class Member objected to the requested fees and costs. (*Id.* ¶ 10.)

### I.    Settlement Administration Costs

The Court preliminarily approved Phoenix Settlement Administrators to

serve as the Settlement Administrator. Plaintiff seeks approval of the Settlement
Administrator's fees in the amount of $10,000.00. (Admin Decl. ¶ 16, Ex. B.) The
administration costs will be deducted from the Gross Settlement Amount.
(Settlement Agreement ¶ 62.)

## III.    FINAL CLASS CERTIFICATION OF THE CLASS IS
APPROPRIATE

To be certified, a settlement class must meet the following criteria: (1) the
individuals in the settlement class are so numerous that joinder would be
impractical; (2) there is a commonality of interest between the plaintiff and the
members of the settlement class; (3) plaintiff's claims are typical of the claims of
the settlement class members; and (4) plaintiff and their counsel will fully and
adequately represent the interests of the settlement class members. Fed. R. Civ. P.
23(a); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). In
preliminarily approving the proposed Settlement, the Court found each of these
criteria to be satisfied. Preliminary Approval Order (Dkt. No. 144.) Insofar as
nothing has changed with respect to the Class definition or its suitability for
certification, the Court should grant final class certification of the class.

## IV.    CLASS MEMBERS WERE PROVIDED PROPER NOTICE OF THE
SETTLEMENT

The notice procedures required by the Preliminary Approval Order, have
been followed and satisfy all due process rights of Class Members. The
Preliminary Approval Order contemplated that the Class Notice, as approved in the
Preliminary Approval Order, be sent to all Class Members by first class mail, as
specified in the Settlement Agreement. Further, the Preliminary Approval Order
contemplated, that Phoenix Settlement Administrators would serve as the
Settlement Administrator.

As clearly stated in the Admin Declaration, notice was provided to Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

Members, as required by the Preliminary Approval Order.  On January 26, 2024, Phoenix mailed the Notice via U.S. first class mail to all six hundred eighty-one (681) Class Members on the Class List. (Admin Decl. ¶6.)  Fifteen (15) Notices have been returned to Phoenix. (*Id.* at ¶7.)  For the fifteen (15) Notices returned from the Post Office without a forwarding address, Phoenix attempted to locate a current mailing address using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. (*Id.*). Of the fifteen (15) Notices that were skip traced, seven (7) updated addresses were obtained and the Notice was promptly re-mailed to those Class Members via first class mail.  (*Id.*). As such, eight (8) Notices remain undeliverable since an updated address could not be obtained via skip trace.  (*Id.* at ¶ 8).

The provision of sending the notice to class members as described above meets the requirements for the "best notice practicable" in this case as necessary to protect the due process rights of class members. *See*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process). Class Members were provided with a mailing regarding the settlement that explained the settlement and allowed Class Members to seek information, ask questions, and object, if so desired. As such, proper notice has been given to the Class Members.

## V.     THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that any compromise of a class action must receive Court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138

(2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel;…and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A.    The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when the plaintiff must overcome barriers to make his case. *Chun-Hoon v. McKee Foods Corp*., 716 F.Supp.2d 848, 851 (N.D. Cal. 2010).

As detailed in the Procedural History, this was a heavily litigated case where Plaintiff prevailed in his Motion for Class Certification and also prevailed in defeating numerous motions brought by the Defendant.  However, prevailing on the merits is never a guarantee. Further, even assuming Plaintiff prevailed at trial, there is a high likelihood that Defendant would have filed an appeal of any judgment that would inevitability delayed resolution of this matter for the class members.  Therefore, this factor favors settlement. *See Dyer v. Wells Fargo Bank, N.A*., 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); *see also*

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B.    Risks, Expense, and Duration of Continued Litigation Supports Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). As set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See id.* at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation"). Again, Plaintiff faced significant risk in this case based on Defendant's contention that its wage statements complied with the law.

### C.    The Settlement Amount Favors Settlement

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002).

An "apples to apples" comparison with a similar case shows that the Settlement is reasonable. The settlement in *McKenzie v. Federal Express Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012), which involved a gross settlement amount of $8,250,000 for 484,928 wage statements, amounted to

approximately $17.00 per wage statement. The District Court found that the *McKenzie* settlement to be fair, reasonable, and adequate. *Id*. at \*6. The instant settlement is more than the amount of the *McKenzie* settlement on a per wage statement basis. This is further evidence that the current settlement is indeed, fair, reasonable, and adequate.

### D.    The Extent of Discovery Favors Settlement

Here, settlement was reached following heavy litigation including multiple motions to compel further responses to discovery and taking Defendant's FRCP Rule 30(b)(6) deposition.  Plaintiff conducted sufficient discovery to obtain class certification and also obtained merits-based discovery through a Motion to Compel. The negotiations at all times were adversarial and non-collusive, including a full day before a third-party mediator. Moreover, Class Counsel had the information necessary to ascertain the value of the class claim. Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement. *See*, *e.g*., *Dyer*, 2014 WL 5369395, at \*3; *Chun-Hoon*, 716 F.Supp.2d at 848 ("true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### E.    The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight.  *Boyd v. Bechtel Corp*., 485 F.Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F.Supp.

446, 451 (N.D. Cal. 1988).

Class Counsel has broad experience litigating employment class actions.
(Declaration of Edward Choi ("Choi Decl.") ¶¶ 3-4; Declaration of Larry W. Lee
("Lee Decl.") ¶¶ 3-7; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6). They
support this settlement as a fair and reasonable settlement which is in the best
interest of the Settlement Class. (Choi Decl. ¶ 5; Lee Decl. ¶ 13; Hyun Decl. ¶ 7).
Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL
5369395, at *3 (recommendation of plaintiffs' counsel supports approval of
settlement); *Chun-Hoon*, 716 F.Supp.2d at 848 (same).

### F.    The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action
settlement raises a strong presumption that" the settlement is favorable to class
members. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal.
2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13,
1999) ("The greater the number of objectors, the heavier the burden on the
proponents of settlement to prove fairness.").

Here, zero individuals have objected, opted out, or had any disputes with
their settlement payments. (Admin Decl. ¶¶ 9-10.) Thus, the absence of objections
and opt-outs strongly support the fairness of the settlement. *See Churchill Vill.
LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with
45 objections and 500 opt-outs from a 90,000-person class, representing .05% and
.56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support
from class in favor of approving settlement where only three of 8,695 class
members opted out); *Chun-Hoon*, 716 F.Supp.2d at 852 (where 16 of 329 class
members opted out, court found that positive class reaction "strongly supports
settlement").

///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

### G.    The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982). Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement. *See Chun-Hoon*, 716 F.Supp.2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation, Fourth* § 21.6 (Fed. Jud. Ctr., 4th ed. 2004). As noted above, the Parties participated in an arm's length negotiation, facilitated by a professional mediator with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F.Supp.2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp*., the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th Cir. 2009), citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a

reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* at 965 (citations omitted); *see also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation, Fourth* § 30.42).

The proposed settlement has no deficiencies. There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625  (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

///

///

///

///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

## VI.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

### A.    Attorneys' Fees in Common Fund Cases

#### 1.    The Court Should Award Fees Based on the Percentage of the Recovery

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement. In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478; *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

Every United States Supreme Court case that has considered the award of

attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery). Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40%, and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See* Newberg on Class Actions § 14.6 (4th ed. 2002) (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing Co.*, 444 U.S. at 478. Unlike the lodestar method which can

encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns. Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

Plaintiff respectfully submits that California law should govern this Court's analysis.[1] The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal.5th 480, 503 (2016). Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation—convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id.* (internal citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047.

---

[1] Courts are obligated to apply California law in diversity jurisdiction cases in awarding attorneys' fees. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("**[i]n diversity actions…, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award representing one-third of the fund and rejected the objections of putative class members to this award. *Laffitte*, 1 Cal.5th at 506. Further, this was based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal.App.4th 860, 871.

Numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) and *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166), followed *Laffitte* in awarding class counsel (the same counsel as in the instant case) 1/3 of the common fund of $1.15 million based on a multiplier of 1.32 and $3.8 million based on a negative multiplier, respectively.

Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), followed *Laffitte*, in awarding 1/3 of the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. (Dkt. No. 55 at 12-14). In so holding, the Court reiterated that "[i]n a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them." *Id*.; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in awarding 33% of the common fund; "[t]he California

Supreme Court recently held that the percentage-of-fund method of calculating

attorneys' fees survives in California courts”).

## 2.  Class Counsel Satisfies the Criteria for a Common Fund Award

Courts consider the following factors in issuing an award under the

common fund approach:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)

(internal quotation marks omitted) (quoting *Vizcaino*, 290 F.3d at 1047-50).

In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th

Cir. 1991), the court identified various factors to be considered in arriving at a

common fund fee determination.  Each of the factors are addressed as follows:

(a) **The time and labor required -** Plaintiff's counsel's time and

labor required is discussed more thoroughly below in section VII.B. in the lodestar

cross-check.  In sum, Plaintiff's counsel's lodestar results in a **negative** lodestar

which supports the awarding of the requested fees.

(b) **The novelty and difficulty of the questions involved** – this

case involved novel and difficult questions of evolving law.  Specifically,

Defendant brought multiple motions based on the Federal Enclave Doctrine which

Plaintiff prevailed on.  However, if Plaintiff were to prevail at trial, there is no

doubt that Defendant would have sought review of the judgment with the Ninth

Circuit Court of Appeal and potentially would have been able to overturn the

verdict.  Thus, this factor weighs in favor of a percentage of the common fund and,

as discussed below, shows how much risk Plaintiff's counsel assumed in bringing

this case.

(c) **The skill requisite to perform the legal services properly** – this goes hand in hand with the first and second factors. Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases.

(d) **The preclusion of other employment by the attorney due to the acceptance of the case** – the case required and demanded attorney time on both sides. The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing.

(e) **The customary fee** – as discussed above, numerous courts have approved an award of 33 1/3% of the gross settlement fund, which is the standard percentage pursuant to California law.

(f) **Whether the fee is fixed or contingent** – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel. Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation. In addition to the supporting documentation and legal authority presented in the Plaintiff's moving papers, Plaintiff's counsel submits that the attorneys' fees proposed are not just fair and reasonable; they are necessary in order to incentivize attorneys to take on the risk of time and expense associated with class actions. Indeed, many times Plaintiff's counsel expend enormous amounts of work and out of pocket costs in the interest of aggrieved employees and/or the State of California, only to end up without any recovery whatsoever. For example, in the matter of *Magadia v. Wal-Mart*, Plaintiff's counsel expended thousands of hours work and over two hundred thousand dollars ($200,000.00) in out-of-pocket costs. While Plaintiff's counsel initially obtained a trial verdict of $102 million, the entirety of this verdict was wiped out on appeal. *See Magadia v.*

*Wal-Mart*, 999 F.3d 668 (2021).  In yet another recent example, Plaintiff's counsel also expended significant time and expenses in another wage/hour class and PAGA action, only to have the District Court grant summary judgment in its entirety against Plaintiff.  *See Guynn-Neupane*, 2021 WL 4481661 (N.D. Cal. Sep. 30, 2021).  These are the actual risks that Plaintiff requests this Court take into account when considering the requested attorneys' fees, including any multiplier to be accounted into Plaintiff's lodestar.

(g) **Time limitation imposed by the client or the circumstances** – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case.

(h) **The amount involved and results obtained** – Plaintiff and his counsel achieved a concrete monetary award in the amount of $500,000 plus the additional $20,581.89 based on the escalator clause being triggered.  This will benefit class members without having to wait for a trial and appeals.

(i) **The experience, reputation and ability of the attorney** – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters.  Further, as discuss above, if Plaintiff's counsel did not expeditiously mediate this matter and instead engaged in protracted discovery, there was a substantial risk that the class could have received nothing, as was the case in *Magadia v. Wal-Mart*, 999 F.3d 668 (2021) and *Guynn-Neupane*, 2021 WL 4481661 (N.D. Cal. Sep. 30, 2021).

(j) **The nature and length of the relationship with the client** – this factor does not apply in this matter.

**B.    The Lodestar Calculation "Cross-Check"**

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by employing a lodestar with a multiplier analysis. While the lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are

made available to class members, its use can provide further validation of the appropriateness of the percentage award approach. *See In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F.Supp.2d 721 (D.N.J. 2000). Such is the case here.

The declarations of Class Counsel evidence the fact that they devoted approximately 733.5 hours of time to this litigation to date. (Choi Decl. ¶¶ 6-7, Ex. A; Lee Decl. ¶ 16, Ex. A; Hyun Decl. ¶ 8, Ex. A). These hours are summarized in the time and task charts that are attached to Plaintiff's counsel's declarations. And, to the extent that any argument is made that the time spent was duplicative, the way in which Class Counsel work is for each attorney to handle a task and for the other attorneys to review and revise the work, which is identical to the way defense firms staff and handle cases. More importantly, as recently noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'" (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, Class Counsel expect to expend an additional 30 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with class members regarding the case status. (Choi Decl. ¶ 7; Lee Decl. ¶ 17; Hyun Decl. ¶ 9). Thus, Class Counsel will have expended 763.5 hours through final approval. Applying the various hourly rates of the lawyers who dedicated their efforts to this matter, a lodestar of $648,975.00 is established for the amount of work spent through final approval. (Choi Decl. ¶¶ 6-7 Ex. A; Lee Decl. ¶¶ 16-18, Ex. A; Hyun Decl. ¶¶ 8-10, Ex. A) Thus, the fee application is supported whether by the cross-check lodestar method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable. Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. The background and experience of Class Counsel are fully set forth in the declarations filed in support of this motion. The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation. The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed. (Choi Decl. ¶¶ 6-7, Ex. A; Lee Decl. ¶ 16, Ex. A; Hyun Decl. ¶ 8, Ex. A).

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation. (Choi Decl. ¶¶ 3-4; Lee Decl. ¶¶ 3-7; Hyun Decl. ¶¶ 3-6). Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter. *Ketchum vs. Moses*, 24 Cal.4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself…." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App.4th 440, 447 (2000). In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc.*, 22 Cal. 4th 1084 (2000), 1095. When determining a reasonable hourly rate, courts may consider factors such as skill and experience, the nature of the work performed, the relevant area of expertise and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1998), 632.

In the Procedural History section above and in the accompanying attorney,

the nature and extent of the proceedings held throughout this litigation were set forth in detail. Without repeating the same, it is incorporated herein. The total hours and billings thus generated are all supported herein. In sum, it is submitted that the reasonableness of Plaintiff's lodestar is manifest. In the present case, Class Counsel's lodestar amounts to a **negative multiplier** of 0.26, which further supports the requested fee award.

Thus, whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the lodestar approach, the fees are fully supported.

### C. The Court Should Approve the Request for Reimbursement of Costs

The request for reimbursement of costs, in the amount of $22,141.86 is fair and reasonable. The costs are all litigation related costs, which have been detailed in the supporting declaration of Class Counsel. (Lee Decl. ¶ 19, Ex. B; Choi Decl. ¶ 8, Ex. B; Hyun Decl. ¶ 11). The authority for the Court to award costs is the Parties' Settlement Agreement and Labor Code § 226(e). Further, pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request for reimbursement of costs up to $30,000.00, but the actual costs that are being sought are much less than the amount allotted in the Settlement Agreement.

## VII.  PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED

Finally, Plaintiff respectfully requests that the full amount of the service payment be awarded to his for the efforts that he undertook on behalf of the Class Members. It is commonly held that it is appropriate to recognize the role of the representative plaintiff without whose actions and courage the benefits of the settlement, which are conferred on the class as a whole, would never have been achieved. The criteria courts may consider in relation to incentive payments include: (1) the risk to the class representative in commencing the suit, both

financial and otherwise; (2) the notoriety and personal difficulties encountered by
the class representative; (3) the amount of time and effort spent by the class
representative; (4) the duration of the litigation; and (5) the personal benefit (or
lack thereof) enjoyed by the class representative as a result of the litigation. *See
Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003). Each of these factors
favors the service awards requested in the present case.

Plaintiff is the only representative in this case. Plaintiff met with his
attorneys to provide information regarding the facts involved. (Del Fierro Decl. ¶
5.) Plaintiff also met with his attorneys to discuss the case and facts related to this
matter. (*Id.*) Plaintiff has made himself available to answer questions, review
pleadings, and to sign declarations in support of the various motions that have been
brought in this case. (*Id.*) Plaintiff took these risks upon himself from which the
whole Class benefitted. Class members did not have to file individual lawsuits, nor
did they have to bear the risks of payment of fees and costs should they not prevail.
(*Id.* ¶¶ 7-8.) Class members also do not have to face the risk of potential retaliation
or risk of future employment, due to Plaintiff's efforts. In short, Plaintiff sacrificed
a significant amount of time, effort, and her own rights in bringing about the
benefits to the class.

The payment of enhancement awards to successful class representatives is
appropriate and the amount of $10,000.00 to Plaintiff is within the typically
accepted range. *See e.g. Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294,
299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet
Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D. Ohio 1990) (two
incentive awards of $55,000, and three incentive awards of $ 35,000); *Brotherton
v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000
Incentive award); *Glass v. UBS Fin. Servs*., No. C-06-4068, 2007 U.S. Dist.
LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) (awarding $25,000 Incentive

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

award in FLSA overtime wages class action). Moreover, a $10,000.00 service payment represents only 2% of the gross settlement amount. For such reasons, Plaintiff respectfully requests that this Court find the enhancement payment amount of $10,000.00 to Plaintiff as fair, reasonable, and adequate and that the enhancement payment be awarded to Plaintiff.

## VIII.  SETTLEMENT ADMINISTRATION COSTS SHOULD BE APPROVED

Here, Phoenix Settlement Administrators dutifully administered the settlement. (*See generally* Admin Decl.) The Agreement provides up to $10,000.00 for Phoenix's costs. (Settlement Agreement ¶62) Plaintiff respectfully requests that the Court approve payment of $10,000.00 to Phoenix in settlement administrator expenses.

## IX.  CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion be granted in its entirety, including Plaintiff's requests for attorney's fees in the amount of $173,527.33, litigation costs in the amount of $22,141.86, a class representative service award of $10,000.00, and settlement administration costs of $10,000.00. Plaintiff respectfully requests that the Court:

1.    Grant final approval of the proposed class action settlement;

2.    Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.    Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.    Enter the proposed Final Approval Order and Judgment submitted herewith; and

///

///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**

5.      Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.

DATED: April 15, 2024          LAW OFFICES OF CHOI & ASSOCIATES

By:  ___/s/ Edward W. Choi_____
                    Edward W. Choi
            Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**